**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-3027

_____

In re: COGNIZANT TECHNOLOGY SOLUTIONS
CORPORATION DERIVATIVE LITIGATION

Josh Schaufelberger, Brian Hayden, Tim Keeley, Robert
Calhoun, Glyn Ramage, Robert Green, Steven Tyler, and
Michael Testerman, in their capacities as Trustees of the
Employers and Laborers Locals 100 and 397 Pension Fund;
John Lautzenheiser; Michael S. Graniero III; James B. Hoy,
as Trustee and Beneficiary of the James B. Hoy & Marjorie
A. Hoy TTEES FBO Marjorie A. Hoy Rev Liv Trust,
                                                    Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-17-cv-01248)
District Judge: Honorable Kevin McNulty

_____

Submitted Before Merits Panel on November 15, 2023
Resubmitted Sua Sponte En Banc on March 29, 2024

Before: CHAGARES, *Chief Judge*, JORDAN, HARDIMAN,
KRAUSE, RESTREPO, BIBAS, PORTER, MATEY,
PHIPPS, FREEMAN, MONTGOMERY-REEVES, CHUNG,
and FUENTES,[*] *Circuit Judges*.

(Filed: May 3, 2024)

William B. Federman
Federman & Sherwood
10205 NW Pennsylvania Avenue
Oklahoma City, OK 73120

Matthew F. Gately
Peter S. Pearlman
Cohn Lifland Pearlman Herrmann & Knopf
Park 80 W, Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663

Benny C. Goodman, III
Steven Hubachek
Erik W. Luedeke
Robbins Geller Rudman & Dowd
655 W Broadway, Suite 1900
San Diego, CA 92101
         *Counsel for Plaintiffs-Appellants*

James M. Ficaro
Robert B. Weiser

---

[*] Judge Fuentes is participating as a member of the en banc court pursuant to Third Circuit I.O.P. 9.6.4.

The Weiser Law Firm
200 Barr Harbor Drive
Four Tower Bridge, Suite 400
West Conshohocken, PA 19428
*Counsel for Plaintiff-Appellant Michael S. Graniero, III*

Gary S. Graifman
Kantrowitz Goldhamer & Graifman
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645

Britt W. Sowle
Cavanagh & O'Hara
2319 W Jefferson Street
Springfield, IL 62702
*Counsel for Plaintiffs-Appellants Josh Schaufelberger, Brian Hayden, Tim Keeley, Robert Calhoun, Glyn Ramage, Robert Green, Steven Tyler, and Michael Testerman, in their capacities as Trustees of the Employers and Laborers Locals 100 and 397 Pension Fund*

Melissa A. Fortunato
Bragar Eagel & Squire
810 Seventh Avenue, Suite 620
New York, NY 10019

Ligaya T. Hernandez
Michael J. Hynes
Hynes Keller & Hernandez
1150 First Avenue, Suite 501
King of Prussia, PA 19406

James S. Notis
Gardy & Notis
560 Sylvan Avenue
Englewood Cliffs, NJ 07632

Jennifer Sarnelli
Gardy & Notis
126 E 56th Street, Eighth Floor
New York, NY 10022
> *Counsel for Plaintiff-Appellant James B. Hoy, as
> Trustee and Beneficiary of the James B. Hoy &
> Marjorie A. Hoy TTEES FBO Marjorie A. Hoy Rev Liv
> Trust*

Charles A. Brown
Daniel P. Roeser
Goodwin Procter
620 Eighth Avenue
The New York Times Building
New York, NY 10018

William Evans
Goodwin Procter
100 Northern Avenue
Boston, MA 02210

William M. Jay
Goodwin Procter
1900 N Street NW
Washington, DC 20036
> *Counsel for Defendant-Appellee Cognizant
> Technology Solutions Corp.*

Sarah D. Efronson
Rajeev Muttreja
Jones Day
250 Vesey Street, Floor 31
New York, NY 10281

Christopher J. Keale
James H. Keale
Tanenbaum Keale
100 Mulberry Street
Three Gateway Center, Suite 1301
Newark, NJ 07102
    *Counsel for Defendant-Appellee Gordon Coburn*

Theodore V. Wells, Jr.
Andrew J. Ehrlich
Alison R. Benedon
Paul Weiss Rifkind Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019

Matthew D. Stachel
Paul Weiss Rifkind Wharton & Garrison
1313 N Market Street
P.O. Box 32, Suite 806
Wilmington, DE 19899
    *Counsel for Defendant-Appellee Steven E. Schwartz*

_____

OPINION OF THE COURT

_____

**FUENTES**, *Circuit Judge*.

We initiated en banc review of this case to consider what standard of appellate review ought to apply when a district court dismisses a shareholder derivative action for failure to plead demand futility under Federal Rule of Civil Procedure 23.1 and applicable state law. To date, our Circuit precedent, including *Blasband v. Rales*[1] and its progeny, provides that we must review such dismissals for an abuse of discretion.[2] But over the last three decades, many courts have expressed skepticism regarding the appropriateness of this standard, given that we ordinarily review dismissals on the pleadings de novo. Indeed, the Courts of Appeals for the First, Second, Seventh, Eighth, and Tenth Circuits, as well as the supreme courts of several states (including Delaware and New Jersey) now exercise de novo review in demand futility cases.

We agree with that approach, and we see no sound reason to apply a different standard of review to shareholder derivative actions than we would to any other type of case. So

_____

[1] 971 F.2d 1034 (3d Cir. 1992).

[2] *Id.* at 1040; *see also, e.g.*, *Freedman v. Redstone*, 753 F.3d 416, 423 (3d Cir. 2014); *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 399 (3d Cir. 2007); *Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007).

6

we now hold that a district court's decision to dismiss a derivative action for failure to plead demand futility is to be reviewed de novo.[3]  Applying that standard here, we will affirm the District Court's order.

## FACTS AND PROCEDURAL HISTORY

The District Court disposed of this case on a motion to dismiss, so we assume the truth of the allegations in Plaintiffs' complaint for purposes of this appeal.[4]  The following recitation of facts is adopted from Plaintiffs' complaint.

Cognizant Technology Solutions Corporation ("Cognizant") is an information technology services and consulting company incorporated in Delaware and headquartered in New Jersey.  Because it has international operations, including in India, Cognizant is subject to the Foreign Corrupt Practices Act of 1977 ("FCPA"),[5] which prohibits bribes to public officials by businesses and requires internal company controls to detect and prevent corruption.

From 2010 to 2015, Cognizant employees in India paid approximately $6 million in bribes to Indian government

---

[3] "It is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels."  3d Cir. I.O.P. 9.1.  A decision from the en banc court is therefore required to overturn the holding in a precedential opinion of a previous panel.  *Id.*

[4] *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)).

[5] 15 U.S.C. §§ 78dd-1, *et seq.*

officials for the purpose of securing construction-related permits and operating licenses. Those permits and licenses allowed Cognizant to operate in Special Economic Zones ("SEZs") that provided tax holidays and related economic benefits.

During that period, Cognizant's Board of Directors ("Board") received updates indicating that the company's anti-corruption controls could use improving. For example, during four meetings of the Board's Audit Committee in 2014 and 2015, directors learned that there was a "weakness"[6] in Cognizant's global sub-contracting management process for hiring individual contract workers in India and that the company's case management tool for tracking incidents of bribery and corruption suffered from "[i]nconsistent and untimely documentation . . . leading to lack of visibility of potential compliance issues."[7] At a November 2015 meeting, management informed the directors that "'[a] program is underway to ensure that disciplinary actions in India come into closer conformance with the rest of the countries,' and that '[c]ompliance is providing continuing examples from other countries to support the desired result in India.'"[8]

In 2015 and 2016, Cognizant published, and the Board signed off on, two public Sustainability Reports stating that no incidents of corruption had been reported in either 2014 or 2015. Both reports also described the company's ongoing efforts to improve compliance controls and procedures,

---

[6] Joint Appendix ("J.A.") 10.

[7] *Id.*

[8] *Id.* at 11.

including role-based anti-corruption training and annual risk analysis surveys.

It is not clear when exactly Cognizant's managers discovered the India bribery scheme, but the company gradually released public disclosures in late 2016 and early 2017. The Board also notified the Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC"). The DOJ declined prosecution, but the SEC opened an investigation into Cognizant's compliance with the FCPA. Cognizant incurred over $60 million in investigative costs, and the SEC ultimately fined the company $25 million for its FCPA violations. The shareholders were not pleased.

In July 2017, Plaintiffs filed this consolidated action in federal court against Cognizant's eleven Board members (the "Director Defendants")[9] and five of its current and former officers (the "Officer Defendants")[10] for breach of fiduciary duties, corporate waste, unjust enrichment, and contribution and indemnification.[11] They allege that Defendants knew of

---

[9] Six of the Director Defendants (which constitutes a majority of the Board) sat on the Board's Audit Committee (which oversees FCPA compliance) during the relevant period.

[10] Two of the Officer Defendants were separately charged. *See United States v. Coburn*, No. 2-19-cr-00120 (D.N.J. filed Feb. 14, 2019); *Sec. & Exch. Comm'n v. Coburn*, No. 19-cv-5820 (D.N.J. filed Feb. 15, 2019).

[11] A class-action suit against Cognizant settled after this derivative action was filed. *See In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 2-16-cv-06509, Dkt. No. 183 (D.N.J. Dec. 20, 2021). A related shareholder derivative action, filed after the plaintiff made a demand on the Board, is also pending

"several red flags"[12] in Cognizant's FCPA compliance program back in 2014 but ignored the problems and hid their concerns from shareholders.

Plaintiffs failed to make a pre-suit litigation demand on Cognizant's Board before bringing this case. All defendants moved to dismiss the complaint on that basis. The District Court granted the motions, holding that Plaintiffs' complaint failed to state with particularity the reasons why making such a demand would have been futile. This appeal followed.[13]

## STANDARD OF REVIEW

The threshold question here—which we gather en banc to address—is what standard of appellate review should apply when a district court dismisses a shareholder derivative action based on a plaintiff's failure to plead demand futility under Rule 23.1.[14]

---

in the District of New Jersey. *See Palempalli v. Patsalos-Fox*, No. 2-21-cv-12025 (D.N.J. filed June 1, 2021).

[12] J.A. 10.

[13] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367, and we have jurisdiction under 28 U.S.C. § 1291.

[14] Although the parties did discuss this issue in their briefing to the panel, upon initiating en banc review, we directed the parties to file supplemental briefs addressing whether we should reconsider our precedent with respect to the standard of review applied to Rule 23.1 demand futility determinations and whether the standard of review is dispositive of this appeal.

## A.

It is a "basic principle of corporate governance"[15] that "directors, rather than shareholders, manage the business and affairs of the corporation."[16]  The board's authority extends to a corporation's assets.  And legal claims are assets.  Thus, the board generally has the power to decide "what remedial actions a corporation should take after being harmed, including whether the corporation should file a lawsuit against its directors, its officers, its controller, or an outsider."[17]

In a shareholder derivative suit, the plaintiff seeks to bring a claim that belongs to the corporation on the corporation's behalf.  "By its very nature," this sort of suit "encroaches on the managerial freedom of directors by seeking to deprive the board of control over a corporation's litigation asset."[18]  Accordingly, a plaintiff seeking to file a shareholder derivative suit must either (1) make a demand on the company's board of directors to file the lawsuit itself, or (2) show that making such a demand would be "futile."[19]  This demand requirement "ensures exhaustion of intra-corporate remedies, thereby possibly avoiding litigation in the first place" and "gives the corporation an opportunity to pursue

---

[15] *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 530 (1984).

[16] *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1047 (Del. 2021) (en banc) (quoting *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) (en banc)).

[17] *Id.*

[18] *Id.* (internal quotations and alterations omitted).

[19] *Id.*

claims that the [b]oard believes are meritorious and seek dismissal of the others."[20]

Federal Rule of Civil Procedure 23.1 requires that derivative complaints allege "with particularity" either that a satisfactory pre-suit demand was presented to and refused by the board of directors or "the reasons for not obtaining the action or not making the effort."[21]  However, Rule 23.1 merely sets the pleading standard; it "does not *create* a demand requirement of any particular dimension."[22]  Rather, the law of the state of incorporation (here, Delaware) establishes the demand requirement and governs the analysis of whether demand was wrongfully refused or whether demand must be excused as futile.[23]

Here, Plaintiffs focus on demand futility.  And under Delaware law, demand is futile if a majority of the directors who comprise the demand board either: (1) "received a material personal benefit from the alleged misconduct that is the subject of the litigation demand"; (2) "faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand"; or (3) "lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand."[24]  "If the answer to any of the questions is

---

[20] *Shaev v. Saper*, 320 F.3d 373, 377 (3d Cir. 2003).

[21] *See* Fed. R. Civ. P. 23.1(b)(3).

[22] *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991).

[23] *Kanter*, 489 F.3d at 176.

[24] *Zuckerberg*, 262 A.3d at 1059.

'yes' for at least half of the members of the demand board, then demand is excused as futile."[25]

## B.

In our 1992 decision in *Blasband*, we explained, for the first time in our caselaw, that a district court's "determination of demand futility" is "reviewed for abuse of discretion," though "its choice of legal precepts" in making that determination is reviewed de novo.[26] At the time, we cited decisions from our sister Courts of Appeals that had adopted the abuse-of-discretion standard in demand futility cases and noted that demand futility generally "depends upon the facts of each case."[27] We have since applied the abuse-of-discretion standard in several precedential opinions on demand futility.[28]

Here, however, Plaintiffs ask us to exercise plenary review over the entirety of the District Court's decision. First, they argue that their appeal implicates "the legal precepts employed" by the District Court, and thus requires de novo review, because it challenges "both [its] inferences, drawn from the Complaint, and its analysis of Delaware's fiduciary-

---

[25] *Id.*

[26] 971 F.2d at 1040 (citing *Peller v. S. Co.*, 911 F.2d 1532, 1536 (11th Cir. 1990); *Starrels v. First Nat'l Bank of Chi.*, 870 F.2d 1168, 1170 (7th Cir. 1989); *Gaubert v. Fed. Home Loan Bank Bd.*, 863 F.2d 59, 68 n.10 (D.C. Cir. 1988); *Lewis v. Graves*, 701 F.2d 245, 248 (2d Cir. 1983)).

[27] *Id.*

[28] *See, e.g.*, *Garber v. Lego*, 11 F.3d 1197, 1200 (3d Cir. 1993); *Kanter*, 489 F.3d at 175; *Merck*, 493 F.3d at 399; *Freedman*, 753 F.3d at 423.

duty jurisprudence."[29]  But Plaintiffs also submit that applying our current standard to demand futility determinations in general raises difficult practical issues because "a trial court applying Delaware law exercises no discretion in determining whether a complaint adequately alleges that demand is excused."[30]

Plaintiffs also point to a "clear trend in the federal courts" toward reviewing demand futility dismissals de novo.[31] As a general matter, "we decide cases before us based on our own examination of the issue, not on the views of other jurisdictions."[32]  But when other courts largely disapprove of our reasoning in more recent decisions, "those contrary views may 'impel us to consider whether the reasoning applied by our colleagues elsewhere is persuasive.'"[33]  This is one such occasion.  Just eight years after *Blasband*, the Delaware Supreme Court abandoned the abuse-of-discretion standard in

---

[29] Opening Br. 26 (citing *Freedman*, 723 F.3d at 423).

[30] *Id.* (citing *Brehm*, 746 A.2d at 253–54).

[31] *Id.* (citing, *e.g.*, *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 235–36 (2d Cir. 2015)).

[32] *In re Grossman's Inc.*, 607 F.3d 114, 121 (3d Cir. 2010) (en banc).

[33] *Joyce v. Maersk Line Ltd.*, 876 F.3d 502, 508 (3d Cir. 2017) (en banc) (quoting *Grossman's*, 607 F.3d at 121); *see Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 592 (3d Cir. 2020) (en banc) ("[O]n rare occasions a circuit precedent, though not directly overruled or superseded, nonetheless might crumble if case law postdating the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." (internal quotations omitted)).

favor of de novo review for demand futility dismissals under the analogous Delaware Chancery Court Rule 23.1.[34] Since then, the Courts of Appeals for the First, Second, Sixth, Seventh, Eighth, and Tenth Circuits have all adopted de novo review for demand futility cases.[35] As a result, two of the out-of-circuit decisions we relied upon in *Blasband* are no longer good law.[36] Even in the Courts of Appeals for the Ninth and D.C. Circuits, which still apply abuse-of-discretion review,

---

[34] *See Brehm*, 746 A.2d at 253–54 (abrogating *Aronson*, 473 A.2d at 814). Other state supreme courts, persuaded by the reasoning in *Brehm*, have followed suit. *See, e.g.*, *In re PSE & G S'holder Litig.*, 801 A.2d 295, 313 (N.J. 2002); *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1180 (Nev. 2006); *Behradrezaee v. Dashtara*, 910 A.2d 349, 362 (D.C. 2006); *see also Harhen v. Brown*, 730 N.E.2d 859, 866 (Mass. 2000) (following *Brehm* in a "demand refused" case).

[35] *See Unión de Empleados de Muelles de P.R. PRSSA Welfare Plan v. UBS Fin. Servs. Inc. of P.R.*, 704 F.3d 155, 162–63 (1st Cir. 2013); *Espinoza*, 797 F.3d at 236 ("[D]iscard[ing] the deferential standard" embraced by prior Second Circuit precedent); *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 617 (6th Cir. 2008); *Westmoreland Cnty. Emp. Ret. Sys. v. Parkinson*, 727 F.3d 719, 724–25 (7th Cir. 2013); *Gomes v. Am. Century Cos., Inc.*, 710 F.3d 811, 815 (8th Cir. 2013); *City of Cambridge Ret. Sys. v. Ersek*, 921 F.3d 912, 917–18 (10th Cir. 2019) ("We tend to agree with the trend towards plenary review . . . .").

[36] *See Blasband*, 971 F.2d at 1040 (first citing *Starrels*, 870 F.2d at 1170, *abrogation recognized by Parkinson*, 727 F.3d at 724; and then *Lewis*, 701 F.2d at 248, *overruled by Espinoza*, 797 F.3d at 236).

judges have voiced concerns about the practice.[37]    These developments, taken together, "suggest[] that a reevaluation of [*Blasband*] is in order."[38]

## C.

The Supreme Court has identified several "significant relevant factors" in deciding whether to exercise deferential (*i.e.*, abuse-of-discretion) or de novo review of a district court's

---

[37] *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. ex rel. Fed. Nat'l Morg. Ass'n v. Raines*, 534 F.3d 779, 783 n.2 (D.C. Cir. 2008) ("We tend to agree with plaintiffs that an abuse-of-discretion standard may not be logical in this kind of case . . . ."); *Rosenbloom v. Pyott*, 765 F.3d 1137, 1159–60 (9th Cir. 2014) (Reinhardt, J., specially concurring) ("[A]ll relevant factors cut in favor of *de novo* review."). In 2013, the Supreme Court granted certiorari to resolve this issue but ultimately dismissed the petition when the case settled before oral argument. *See UBS Fin. Servs. Inc. of P.R. v. Unión de Empleados de Muelles de P.R. PRSSA Welfare Plan*, 570 U.S. 916 (granting certiorari), *cert. dismissed*, 570 U.S. 943 (2013).
[38] *Joyce*, 876 F.3d at 509.    And although the applicable standard of review in federal court is undoubtedly an issue of federal law, we should "pay special heed to the Delaware Supreme Court's decision in *Brehm*," given that most public companies are incorporated in Delaware and so many derivative actions arise under Delaware law. *Espinoza*, 797 F.3d at 235 n.5.  Aligning our review with the de novo standard used in Delaware courts would "minimize any anomalies resulting from separate federal and state demand requirements." *Id.* (internal quotations and citation omitted).

decision—though the analysis "is not rigorously scientific."[39] Those factors include: (1) whether, "as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question"[40]; (2) "[t]he non-amenability of the problem to rule, because of the diffuseness of circumstances, novelty, vagueness, or similar reasons that argue for allowing experience to develop"[41]; (3) "the language and structure of the governing statute"[42] or rule; and (4) whether the decision under review "ordinarily has such substantial consequences" that "one might expect it to be reviewed more intensively."[43]

In the context of Rule 23.1 demand futility dismissals, each of these considerations weighs in favor of a de novo standard of review. First, district courts are no better positioned than appellate courts to decide whether demand should be excused as futile because demand futility is a

---

[39] *Pierce v. Underwood*, 487 U.S. 552, 559, 563 (1988).

[40] *Id.* at 559–60 (quoting *Miller v. Fenton*, 474 U.S. 104, 114 (1985)); *see also United States v. Mitchell*, 365 F.3d 215, 234 (3d Cir. 2004) (applying abuse-of-discretion review "when the matter under review was decided by someone who is thought to have a better vantage point than we on the Court of Appeals to assess the matter").

[41] *Pierce*, 487 U.S. at 562 (quoting Maurice Rosenberg, *Judicial Discretion of the Trial Court, Viewed from Above*, 22 Syracuse L. Rev. 635, 663 (1971)); *see also United States v. Tomko*, 562 F.3d 558, 565 (3d Cir. 2009) (en banc) ("[C]ourts of appeals apply the abuse-of-discretion standard to fact-bound issues that are ill-suited for appellate rule-making.").

[42] *Pierce*, 487 U.S. at 559.

[43] *Id.* at 563.

pleading issue.[44]  The nature of our analysis of a complaint in a Rule 23.1 demand futility case "is the same as that applied by the [lower court] in making its decision in the first instance."[45] Indeed, when reviewing the dismissal of a derivative claim, "an appellate court performs exactly the same task as when reviewing the dismissal of any other action: the court reads the facts alleged in the complaint, assumes the truth of those facts, and decides whether those facts state a claim under the applicable legal standard."[46]  That task is quite familiar to us, unlike discretionary rulings involving the balance of potentially competing factors on which we ordinarily defer to the trial judge's expertise and experience—such as the admission or exclusion of evidence,[47] the availability and scope of injunctive relief,[48] or the imposition of a criminal sentence.[49]  When a district court dismisses a complaint due to

---

[44] *Cf. Rosenbloom*, 765 F.3d at 1160 (Reinhardt, J., specially concurring) ("[D]istrict courts do not have an institutional advantage over appellate courts in determining the legal sufficiency of pleadings.").

[45] *Brehm*, 746 A.2d at 253.

[46] *Espinoza*, 797 F.3d at 235.

[47] *See Acumed L.L.C. v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009); *cf.* Fed. R. Evid. 403 (requiring district courts to balance the probative value of relevant evidence against the risk of unfair prejudice).

[48] *See Del. Strong Fams. v. Att'y Gen. of Del.*, 793 F.3d 304, 308 (3d Cir. 2015); *cf. eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (requiring district courts to apply a four-factor test to determine whether to grant injunctive relief).

[49] *See United States v. Miller*, 833 F.3d 274, 285 (3d Cir. 2016); *cf.* 18 U.S.C. § 3553(a) (requiring district courts to consider and weigh seven factors in imposing a criminal sentence).

the legal insufficiency of its allegations, that decision ordinarily gets de novo review.[50]  We see no basis to treat demand futility cases any differently.

Second, "doctrines of demand futility are reasonably uniform and amenable to general rules that cover a wide range of circumstances,"[51] making de novo review especially appropriate.  *Blasband*'s application of the abuse-of-discretion standard rested on the idea that demand futility generally "depends upon the facts of each case."[52]  True as that may be, that is not sufficient in itself to justify a lower level of scrutiny on appeal.  Nearly every application of law to fact on a motion to dismiss depends, to some degree, on the specific allegations in the pleadings.[53]  But we still review those applications de novo, even where, as here, particularized pleading requirements will apply.[54]

---

[50] *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

[51] *Rosenbloom*, 765 F.3d at 1160 (Reinhardt, J., specially concurring).

[52] *Blasband*, 971 F.2d at 1040.

[53] *See, e.g.*, *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411–12 (3d Cir. 1991) (explaining that whether a complaint alleges a "pattern of racketeering activity" under RICO "depend[s] heavily on the specific facts of each case").

[54] *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215–17 (3d Cir. 2002) (exercising plenary review over dismissal of complaint for failure to satisfy particularized pleading requirements under Rule 9(b) and the Private Securities Litigation Reform Act); *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 166 (3d Cir. 2014) (same).

Third, nothing in the text of Rule 23.1 or in applicable state law indicates a preference for the trial court's decision on this issue that would warrant abuse-of-discretion review. Defendants argue that abuse-of-discretion review ought to apply because the demand futility language that was added to the predecessor of Rule 23.1 in 1912 "was apparently intended to codify a judicially recognized exception to the old [demand] [r]ule in certain circumstances where, *in the discretion of the court*, a demand may be excused."[55]  But, in its modern form, Rule 23.1 is merely a pleading standard that incorporates state-law demand requirements and makes no textual indication that our review of demand futility dismissals is anything but independent.[56]

Lastly, demand futility undoubtedly has "substantial consequences"[57] for shareholder cases, given both the serious potential consequence of ending the litigation and the frequency with which this issue arises in derivative actions. Accordingly, "one might expect it to be reviewed more intensively,"[58] and "[w]e see no reason to perpetuate the concept of discretion in this context."[59]

---

[55] Resp. Br. 37 (quoting *Daily Income Fund, Inc.*, 464 U.S. at 530 n.5).

[56] *Compare*, *e.g.*, Fed. R. Civ. P. 52(a)(6) (providing that a trial court's findings of fact "must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility"), *with* Fed. R. Civ. P. 23.1(b)(3) (requiring only that the plaintiff allege demand futility "with particularity").

[57] *Pierce*, 487 U.S. at 563.

[58] *Id.*

[59] *Brehm*, 746 A.2d at 253.

**D.**

To be sure, we "do not overturn our precedents lightly."[60]   But "*stare decisis* 'is not an inexorable command,'"[61] and we see several "special justification[s]" for overruling *Blasband*'s directive on the standard of review for demand futility cases, "over and above the belief that [it] was wrongly decided" on that issue.[62] *Blasband* did not offer much, if any, rationale for adopting the abuse-of-discretion standard.[63]   To the extent we relied upon the general practice of some of our sister Courts of Appeals, "developments since [*Blasband*] was handed down"[64] have substantially eroded that practice; every Court of Appeals to consider this issue as a matter of first impression during that period has adopted de novo review, and others have departed from precedent to do the same.  Moreover, reviewing demand futility cases for an abuse of discretion "is not only unworkable in practice but also

---

[60] *Al-Sharif v. U.S. Citizenship & Immigr. Servs.*, 734 F.3d 207, 212 (3d Cir. 2013) (en banc).

[61] *Id.* (quoting *Payne v. Tennessee*, 501 U.S. 808, 828 (1991)).

[62] *Riccio*, 954 F.3d at 590 (quoting *Kimble v. Marvel Ent., L.L.C.*, 576 U.S. 446, 456 (2015) (internal quotations omitted)).

[63] *See Blasband*, 971 F.2d at 1040 (noting only that demand futility "depends upon the facts of each case"); *Riccio*, 954 F.3d at 590 (considering "the quality of [the prior case]'s reasoning" in determining whether to overrule precedent (quoting *Janus v. AFSCME*, 138 S. Ct. 2448, 2479 (2018))).

[64] *Riccio*, 954 F.3d at 590 (quoting *Janus*, 138 S. Ct. at 2478–79).

flawed in conception"[65] because whether demand is futile is not a matter of one's discretion, but instead depends only on whether the plaintiff adequately pleaded the state-law requirements.  That being so, it hardly makes sense to review whether a district court has abused discretion that it does not have.

Lastly, the Supreme Court has explained that stare decisis principles are least consequential in cases involving "procedural [ ] rules" that tend not to produce reliance interests, such as a standard of review.[66]  And "our en banc Court has never expressed a view on the issue presented" here,[67] so the implications of stare decisis in this case "are less weighty than if we were overturning a precedent established by the court en

---

[65] *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 699 n.1 (2010) (Stevens, J., concurring).

[66] *Pearson v. Callahan*, 555 U.S. 223, 233 (2009) (internal quotations and citation omitted).  "Like rules governing procedures and the admission of evidence in the trial courts," the standard of appellate review for Rule 23.1 demand futility dismissals "does not affect the way in which parties order their affairs," and modifying that standard "would not upset settled expectations on anyone's part."  *See id*.

[67] *Riccio*, 954 F.3d at 592.

banc."[68]

\* \* \*

For these reasons, we now hold that a district court's decision to dismiss a derivative action for failure to plead demand futility under Rule 23.1 is reviewed de novo.  To the extent *Blasband* or our more recent precedential opinions recite the abuse-of-discretion standard, they are overruled on that point.  We now proceed to decide, de novo, whether the District Court correctly dismissed the complaint for failure to allege demand futility.

## ANALYSIS

Under Rule 23.1 and the Delaware Supreme Court's *Zuckerberg* test,[69] Plaintiffs must "state with particularity" facts showing that making a demand on the board would be futile.[70]  Plaintiffs argue that they have cleared this hurdle by alleging that at least half of the Director Defendants (A) individually face a substantial likelihood of liability on one or more the claims presented (*i.e.*, a second *Zuckerberg* factor claim), or (B) lack independence from a director who faces a substantial likelihood liability (*i.e.*, a third *Zuckerberg* factor claim).  We address each argument below.

---

[68] *McKinney v. Pate*, 20 F.3d 1550, 1565 n.21 (11th Cir. 1994) (en banc); *Riccio*, 954 F.3d at 591 ("[P]rior en banc decisions carry more stare decisis weight than prior panel decisions." (citing *McKinney*, 20 F.3d at 1565 n.21)).
[69] *See Zuckerberg*, 262 A.3d at 1059.
[70] Fed. R. Civ. P. 23.1(b)(3)(B).

## A.

First, we consider the directors' likelihood of liability. Plaintiffs argue that the Director Defendants face a substantial likelihood of liability for allegedly breaching their fiduciary duty of loyalty "by causing Cognizant to issue false and misleading 2014 and 2015 Sustainability Reports that assured shareholders that Cognizant had no reportable incidents of corruption" even though "when those reports issued," the company "was in the midst of an ongoing bribery scheme."[71] Plaintiffs also argue that the Director Defendants face a substantial likelihood of liability for allegedly engaging in corporate waste.[72]

## 1.

Plaintiffs' core argument on appeal is that the Director Defendants breached their fiduciary duty of loyalty[73] by

---

[71] Opening Br. 25.

[72] The District Court also analyzed whether the Director Defendants faced a substantial likelihood of liability for a failure-to-monitor claim under *In re Caremark International Inc. Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996). Plaintiffs expressly abandoned that claim on appeal, so we do not address it.

[73] Cognizant's certificate of incorporation waives claims against its directors based on a breach of the fiduciary duty of care. *Cf.* 8 Del. Code Ann. § 102(b)(7) (authorizing such waivers). And directors of Delaware corporations do not owe *independent* fiduciary duties of disclosure or good faith. *See, e.g.*, *Pfeffer v. Redstone*, 965 A.2d 676, 684 (Del. 2009) (en banc) ("[T]he duty of disclosure is not an independent duty, but

informing shareholders that "[n]o incidents" of corruption were reported in 2014 or 2015 even though Cognizant employees were actively engaged in a bribery scheme at that time.[74] Because those allegedly false and misleading assurances were part of routine securities filings and, thus, were "not associated with a request for stockholder action," Plaintiffs must allege that the Director Defendants "*knowingly* disclosed false information" to properly state a claim for breach of the fiduciary duty of loyalty based on the Sustainability Reports.[75]

---

derives from the duties of care and loyalty." (citation omitted)); *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (en banc) ("[T]he obligation to act in good faith does not establish an independent fiduciary duty that stands on the same footing as the duties of care and loyalty."); *Zuckerberg*, 262 A.3d at 1049 ("The directors and officers of a Delaware corporation owe two overarching fiduciary duties— the duty of care and the duty of loyalty." (collecting cases)). Thus, to establish a substantial likelihood of liability, Plaintiffs must plausibly allege that the Director Defendants breached their fiduciary duty of loyalty when they communicated with shareholders. *Zuckerberg*, 262 A.3d at 1054 (holding that "exculpated breach of care claims no longer pose a threat that neutralizes director discretion" and thus do not provide a basis to render demand futile).

[74] J.A. 80–81.

[75] *Dohmen v. Goodman*, 234 A.3d 1161, 1168–69 (Del. 2020) (en banc) (emphasis added); *see also Malone v. Brincat*, 722 A.2d 5, 9 (Del. 1998) (en banc) ("We hold that directors who *knowingly* disseminate false information that results in corporate injury or damage to an individual stockholder violate their fiduciary duty, and may be held accountable in a manner

According to Plaintiffs, the complaint's allegations satisfy this knowledge requirement because "when the Director Defendants caused Cognizant to publicly assure its shareholders that there were no incidents of corruption to report in the 2014 and 2015 Sustainability Reports," the Director Defendants "had no basis for believing that their representations were accurate because they knew of deficiencies in the company's compliance systems."[76]  But Plaintiffs never allege that the Director Defendants knew Cognizant officers and employees had paid bribes to foreign government officials, nor that the Director Defendants knew they were otherwise participating in wrongdoing by publishing the reports.  And that is fatal to Plaintiffs' claim because, under these circumstances, the Director Defendants must have known that they were disseminating false or misleading information to have violated their fiduciary duty of loyalty.

Plaintiffs offer two main responses.  First, Plaintiffs argue they need not show that the Director Defendants knew the Sustainability Reports were false because reckless conduct

---

appropriate to the circumstances." (emphasis added)); *In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 990 (Del. Ch. 2007) (holding that directors "violate the fiduciary duties that protect shareholders" "where it can be shown that the directors involved issued their communication with the *knowledge* that it was deceptive or incomplete." (emphasis added)).  We express no view on how the Delaware Supreme Court would evaluate a breach-of-fiduciary-duty claim based on communications that *were* associated with a request for shareholder action.  *See generally Dohmen*, 234 A.3d at 1168 (collecting cases).

[76] Opening Br. 42 (cleaned up).

can establish a director's bad faith and, thus, a breach of the fiduciary duty of loyalty. For support, Plaintiffs cite to our opinion in *In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*, in which we observed that a corporation's board may have "acted egregiously or in bad faith" by "recklessly ignor[ing] a well-established link between [a medication] and increased cardiovascular risk."[77] But *Merck* does not bear the weight Plaintiffs place upon it. For one, *Merck* involved the application of New Jersey law, not Delaware law.[78] And our passing reference to recklessness was not itself a holding; rather, we made that statement when giving guidance to the district court on remand "[i]n the interests of judicial economy."[79] But even if we were to treat *Merck*'s analysis of demand futility as persuasive authority (because we were effectively applying Delaware law[80]), it does not persuade because, in this context, Delaware law appears to require that a director act with *knowledge* to breach the fiduciary duty of loyalty.[81]

---

[77] 493 F.3d at 403.

[78] *See id.* at 399 ("Both parties agree that we should apply New Jersey law to this case . . . ." (citing *Kanter*, 489 F.3d at 176)).

[79] *Id.* at 402.

[80] *Id.* at 399 ("The New Jersey Supreme Court has adopted Delaware's demand futility standard." (collecting cases)).

[81] *Metro Commc'n Corp. BVI v. Advanced MobileComm Techs., Inc.*, 854 A.2d 121, 158 n.88 (Del. Ch. 2004) ("A common law fraud claim can be supported by a showing of reckless indifference. *Malone* seems to require knowing misconduct." (internal citation omitted)); *see also Dohmen*, 234 A.3d at 1169 (holding that director must "knowingly disclose[] false information" to breach fiduciary duty of loyalty

Second, Plaintiffs argue that the Director Defendants had "constructive knowledge of the bribery scheme" because the complaint alleges that they knew about a "staggering number of gaps in Cognizant's compliance scheme."[82] But this argument conflates knowledge "of deficiencies in the company's compliance systems" with knowledge "of the bribery scheme"[83] itself. Informing the Director Defendants that Cognizant's internal compliance system failed to "reliably track incidents of corruption"[84] and needed improvement did not impart to those directors that Cognizant employees were paying bribes. And none of the complaint's particularized allegations indicate that the Director Defendants knew about, sought to avoid knowledge about, or otherwise should have known about actual bribery. Accordingly, the complaint leaves no basis for Plaintiffs' assertion that the Director Defendants violated their fiduciary duty of loyalty by intentionally disclosing false or misleading information to stockholders through the 2014 or 2015 Sustainability Reports.[85]

---

"in this context"); *Malone*, 722 A.3d at 9 (same); *In re infoUSA*, 953 A.2d at 990 (same).

[82] Opening Br. 44 (cleaned up).

[83] *Id.* at 42, 44.

[84] *Id.* at 45.

[85] Because Plaintiffs have failed to plausibly allege that the Director Defendants face a substantial likelihood of liability for violating their fiduciary duty of loyalty, we do not address the Director Defendants' argument that the complaint does not plausibly allege that they were involved in drafting or disseminating the Sustainability Reports.

**2.**

Corporate waste "entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade. . . . [I]n effect[,] a gift."[86]  This is an "onerous burden."[87]  Corporate waste is limited to "unconscionable cases where directors irrationally squander or give away corporate assets."[88]

Plaintiffs assert that the Director Defendants paid themselves and the Officer Defendants millions of dollars in fees, compensation, and benefits while they were violating their fiduciary duties and damaging Cognizant.  But Plaintiffs do not plead facts demonstrating that the Director Defendants did nothing for their salaries during the relevant period.  Thus, Plaintiffs have not plausibly alleged that the Director Defendants face a substantial likelihood of liability for engaging in corporate waste.

Accordingly, Plaintiffs have not shown that any of the directors face a substantial likelihood of liability on the claims asserted in the derivative action.

**B.**

Because Plaintiffs' second *Zuckerberg* factor claims fall short, they need to show that six directors exercised

---

[86] *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997).
[87] *In re MeadWestvaco S'holders Litig.*, 168 A.3d 675, 686 (Del. Ch. 2017).
[88] *Brehm*, 746 A.2d at 263.

insufficient independence from other directors who themselves faced a substantial risk of liability on the asserted claims to satisfy the third *Zuckerberg* factor. Plaintiffs allege that three directors meet these criteria: Two directors were not independent per Cognizant's own SEC proxy statement, and Plaintiffs allege one other director was not independent because of his past business relationship with one of the criminally charged defendants. But even if we assume that these three directors lack independence, Plaintiffs still fall well short of the six they need.

Because Plaintiffs fail to establish that a majority of the Cognizant directors is likely to face liability on the claims in this derivative action or is insufficiently independent from another director who is, they have not adequately pleaded demand futility under Rule 23.1 and Delaware law. On that basis, the District Court was correct to dismiss their complaint.

## CONCLUSION

Having exercised de novo review and finding no error, we will affirm the District Court's order.